UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| KRIS R. CUMMINGS, | ) | |
|     *Plaintiff*, | ) | |
| | ) | |
| *vs.* | ) | 1:12-cv-01538-JMS-DML |
| | ) | |
| DENNIS R. QUAKENBUSH, JULIE MIRAMONTI, | ) | |
| MARK EPPERSON, HAMILTON COUNTY SHER- | ) | |
| IFF DEPARTMENT, *and* MARK J. BOWEN, *in his* | ) | |
| *official capacity as the Sheriff of Hamilton* | ) | |
| *County*, | ) | |
|     *Defendants*. | ) | |

## ORDER

Presently pending before the Court are: (1) Defendant Mark Epperson's Motion for Summary Judgment, [Filing No. 85]; (2) Defendant Julie Miramonti's Motion for Summary Judgment, [Filing No. 89]; and (3) a Motion for Summary Judgment filed by Defendants Dennis Quakenbush, the Hamilton County Sheriff's Department, and Mark Bowen in his official capacity as the Sheriff of Hamilton County (collectively, "the Hamilton County Defendants"), [Filing No. 91].

## I.
### PROCEDURAL STANDARDS AND COMPLIANCE

### A.  Summary Judgment Standard of Review

A motion for summary judgment asks the Court to find that a trial is unnecessary because there is no genuine dispute as to any material fact and, instead, the movant is entitled to judgment as a matter of law.  *See* Fed. R. Civ. P. 56(a).  As the current version of Rule 56 makes clear, whether a party asserts that a fact is undisputed or genuinely disputed, the party must support the asserted fact by citing to particular parts of the record, including depositions, documents, or affidavits.  Fed. R. Civ. P. 56(c)(1)(A).  A party can also support a fact by showing that the

materials cited do not establish the absence or presence of a genuine dispute or that the adverse party cannot produce admissible evidence to support the fact. Fed. R. Civ. P. 56(c)(1)(B). Affidavits or declarations must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant is competent to testify on matters stated. Fed. R. Civ. P. 56(c)(4). Failure to properly support a fact in opposition to a movant's factual assertion can result in the movant's fact being considered undisputed, and potentially in the grant of summary judgment. Fed. R. Civ. P. 56(e).

In deciding a motion for summary judgment, the Court need only consider disputed facts that are material to the decision. A disputed fact is material if it might affect the outcome of the suit under the governing law. *Hampton v. Ford Motor Co.*, 561 F.3d 709, 713 (7th Cir. 2009). In other words, while there may be facts that are in dispute, summary judgment is appropriate if those facts are not outcome determinative. *Harper v. Vigilant Ins. Co.*, 433 F.3d 521, 525 (7th Cir. 2005). Fact disputes that are irrelevant to the legal question will not be considered. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986).

On summary judgment, a party must show the Court what evidence it has that would convince a trier of fact to accept its version of the events. *Johnson v. Cambridge Indus.*, 325 F.3d 892, 901 (7th Cir. 2003). The moving party is entitled to summary judgment if no reasonable fact-finder could return a verdict for the non-moving party. *Nelson v. Miller*, 570 F.3d 868, 875 (7th Cir. 2009). The Court views the record in the light most favorable to the non-moving party and draws all reasonable inferences in that party's favor. *Darst v. Interstate Brands Corp.*, 512 F.3d 903, 907 (7th Cir. 2008). It cannot weigh evidence or make credibility determinations on summary judgment because those tasks are left to the fact-finder. *O'Leary v. Accretive Health, Inc.*, 657 F.3d 625, 630 (7th Cir. 2011). The Court need only consider the cited materi-

als, Fed. R. Civ. P. 56(c)(3), and the Seventh Circuit Court of Appeals has "repeatedly assured the district courts that they are not required to scour every inch of the record for evidence that is potentially relevant to the summary judgment motion before them," *Johnson, 325 F.3d at 898*. Any doubt as to the existence of a genuine issue for trial is resolved against the moving party. *Ponsetti v. GE Pension Plan, 614 F.3d 684, 691 (7th Cir. 2010)*. On cross-motions for summary judgment, the Court construes facts and draws inferences "in favor of the party against whom the motion under consideration is made." *Keck Garrett & Associates, Inc. v. Nextel Communications, Inc., 517 F.3d 476, 483 (7th Cir. 2008)* (quoting *In re United Air Lines, Inc., 453 F.3d 463, 468 (7th Cir. 2006)*).

### B. Mr. Cummings' Failure to Respond to the Motions

Before setting forth the factual background, the Court must first address Plaintiff Kris Cummings' failure to respond to the pending motions. Mr. Cummings sought several extensions of time to respond to the motions, and the Court granted several of those requests. [*See, e.g.*, Filing No. 105; Filing No. 106; Filing No. 112; Filing No. 117; Filing No. 119.] Specifically, Mr. Cummings moved for an extension of time to respond to the motions until March 18, 2014, which the Court granted. [Filing No. 105; Filing No. 106.] Shortly thereafter, the Court allowed Mr. Cummings' counsel to withdraw from this action. [Filing No. 112.]

On April 10, 2014, the Court cautioned Mr. Cummings that, while it was extending the March 18, 2014 deadline by forty-two days to April 29, 2014, that would be the last extension. [Filing No. 117.] The Court stated "so that there is no misunderstanding, the court here advises Mr. Cummings that it has already granted all extensions it is willing to provide." [Filing No. 117.] It also noted that it told Mr. Cummings it would allow another reasonable extension of the March 18, 2014 deadline "*if* the request is made by *replacement counsel* before the deadline has

passed." [Filing No. 117 at 1 (emphasis in original).][1]  On the April 29, 2014 deadline, Mr. Cummings' new counsel entered an appearance and filed a motion requesting an additional forty-five days to respond to the summary judgment motions.  [Filing No. 119.]  The Court denied that motion based, in part, on its earlier admonition that no further extensions would be granted. [Filing No. 124 at 2.]  The Court also noted that Mr. Cummings had not referenced any efforts to obtain counsel between the withdrawal of his counsel on February 26, 2014 through the third extended response deadline of April 29, 2014.  [Filing No. 124 at 2.]

The consequence of Mr. Cummings' failure to respond to the motions is that he concedes the Defendants' versions of events.  *See Smith v. Lamz*, 321 F.3d 680, 683 (7th Cir. 2003) ("[F]ailure to respond by the nonmovant as mandated by the local rules results in an admission"); *see also Wackett v. City of Beaver Dam, Wis.*, 642 F.3d 578, 582 n.1 (7th Cir. 2011).  The Court continues to apply the above articulated summary judgment standard, but Mr. Cummings' failure to comply with the Local Rules "reduc[es] the pool" from which the facts and inferences may be drawn.  *Smith v. Severn*, 129 F.3d 419, 426 (7th Cir. 1997).  The Seventh Circuit has "repeatedly upheld the strict enforcement of these rules, sustaining the entry of summary judgment when the non-movant has failed to submit a factual statement in the form called for by the pertinent rule and thereby conceded the movant's version of the facts."  *Waldridge v. Am. Hoechst Corp.*, 24 F.3d 918, 922 (7th Cir. 1994).  Accordingly, the Court draws the factual background from the facts submitted by Defendants in their briefs, which Mr. Cummings has conceded are true by failing to timely respond.

---

[1] The Court also provided Mr. Cummings with a copy of the "Notice Regarding Right to Respond to and Submit Evidence in Opposition to Motion for Summary Judgment," which must be provided to *pro se* litigants when a motion for summary judgment is filed against them, but which Mr. Cummings had not yet received up to that point in the litigation since he was represented by counsel when the pending motions were filed.  [Filing No. 117 at 2.]

II.

**II.**

**BACKGROUND**

The Court finds the following to be the undisputed facts, supported by admissible evidence in the record:[2]

**A. The October 23, 2010 Arrest**

On October 23, 2010, Deputy Sheriff Dennis Quakenbush, II, who was then a Sergeant and is presently a Captain with the Hamilton County Sheriff's Department, was on duty and was notified that Hamilton County Deputy Sheriff Ryan Horine had requested that a supervisor come to the scene of a residential fire. [Filing No. 92-2 at 2-4.] Deputy Horine stated that his police vehicle had been struck at the scene. [Filing No. 92-2 at 4.] Sergeant Quakenbush was the on-duty supervisor that day, and began to drive to the fire scene. [Filing No. 92-2 at 4.] During the drive, Deputy Horine called Sergeant Quakenbush on his cell phone to explain the situation, and stated that Mr. Cummings had come to the scene of the fire, that Mr. Cummings had become belligerent and had yelled at Fire Chief Rick Russell, and that he then re-entered his vehicle and backed into Deputy Horine's police vehicle. [Filing No. 92-2 at 4.] Deputy Horine also told Sergeant Quakenbush that he thought Mr. Cummings was impaired, that he was "[l]ikely [on] prescription drugs," and that "[i]t's Kris Cummings." [Filing No. 92-2 at 4.] When Sergeant Quakenbush responded that he did not know who Mr. Cummings was, Deputy Horine said "you

---

[2] The facts the Court finds undisputed herein may differ from the facts outlined in the Court's October 10, 2013 Order denying Dr. Miramonti's Motion for Judgment on the Pleadings. [Filing No. 73.] The facts the Court set forth in its October 10, 2013 Order were based on the materials available at that time, construed in the light most favorable to Mr. Cummings, the non-movant, which materials were cited by Mr. Cummings in compliance with Federal Rule of Civil Procedure 56(c)(1)(A) ("A party asserting that a fact…is genuinely disputed must support the assertion by…citing to particular parts of materials in the record…"). In response to the motions addressed here, Mr. Cummings provided no response and cited no materials whatsoever, so the facts detailed herein are based on the evidence presented by Defendants in their Motions for Summary Judgment.

might bring somebody with you." [Filing No. 92-2 at 4.] Sergeant Quakenbush enlisted Deputy Ryan Meier to assist him. [Filing No. 92-2 at 4.]

Upon arriving at the scene, Sergeant Quakenbush spoke with Deputy Horine who reiterated what he had told Sergeant Quakenbush over the phone. [Filing No. 92-2 at 4.] Deputy Horine told Sergeant Quakenbush he suspected Mr. Cummings was on narcotics, and noted that Mr. Cummings was sitting in his truck and had asked if he could pull up because the lights from the fire truck were bothering his eyes. [Filing No. 92-2 at 4.] Deputy Horine gave Sergeant Quakenbush Mr. Cummings' license and insurance information. [Filing No. 92-2 at 4.]

After speaking with Deputy Horine, Sergeant Quakenbush turned on the video camera in his police vehicle. [Filing No. 92-2 at 4.] He then walked up to the drivers' side of Mr. Cummings' vehicle and began to speak with him. [Filing No. 92-2 at 6.] Sergeant Quakenbush had undergone state and national drug recognition training and was certified as a Drug Recognition Expert. [Filing No. 92-2 at 6-7.] Specifically, his training included the evaluation of individuals who could be suffering from a seizure disorder, and included the observation that the signs and symptoms exhibited or experienced by such individuals can mimic what officers are looking for when evaluating potentially intoxicated drivers. [Filing No. 92-2 at 7-8.]

Sergeant Quakenbush observed that Mr. Cummings appeared to be slumped over and leaning against the driver's side window, that his pupils were constricted (which, if caused by drugs, Sergeant Quakenbush knew could only be caused by narcotics) that his movements were slow and sluggish, that his eyes were bloodshot, that his speech was very low and raspy, and that he was thick-tongued. [Filing No. 92-2 at 6.] Mr. Cummings also appeared to be uncoordinated and was very defensive. [Filing No. 92-2 at 6.]

Sergeant Quakenbush asked Mr. Cummings if he was alright, and asked for his registration. [Filing No. 84 at 10:01-10:02.][3] Sergeant Quakenbush also asked Mr. Cummings if he had any medical problems and Mr. Cummings responded that he had epilepsy and was affected by flashing lights. [Filing No. 84 at 10:02-10:03.] Mr. Cummings also stated that he took narcotics for severe head trauma he suffered in 1992, including Fentanyl, Morphine, Xanax, and Zoloft. [Filing No. 84 at 10:03-10:05.] Mr. Cummings then stated "arrest me," and would not discuss his medical records or history any further. [Filing No. 92-3 at 10; Filing No. 84 at 10:05-10:06.]

Sergeant Quakenbush asked Mr. Cummings to get out of his car, and after he did so Mr. Cummings stated that he was agitated because he was on the verge of having an epileptic seizure, and that stress can cause him to have a seizure. [Filing No. 84 at 10:09.] Mr. Cummings stated that he needed to sit down, but when Sergeant Quakenbush told him to sit on the ground, he refused. [Filing No. 84 at 10:09-10:10.] Sergeant Quakenbush asked Mr. Cummings if he needed a medic, and Mr. Cummings said no, that "they can't do anything for my type of epilepsy." [Filing No. 84 at 10:10.]

Mr. Cummings stated that he would have difficulty passing a field sobriety test given his condition, but that he could walk in a straight line, that Sergeant Quakenbush could examine his eyes, and that Mr. Cummings would do the heel-to-toe walk and the one-leg stand. [Filing No. 84 at 10:11-10:12.] Mr. Cummings then underwent the field sobriety test and failed several aspects of it including balancing on one leg and the nine-step heel to toe and turn test. [Filing No. 84 at 10:14-10:25.] Sergeant Quakenbush then administered a portable breath test to Mr. Cummings to rule out alcohol intoxication, and the result came back at 0.00. [Filing No. 84 at 10:25-10:27.]

[3] Filing No. 84 is a video taken from Sergeant Quakenbush's dashboard camera in his police vehicle.

After Mr. Cummings failed the field sobriety test, Sergeant Quakenbush arrested him for Operating While Intoxicated and placed him in the back of the police vehicle to transport to Riverview Hospital ("Riverview") for a blood draw and a medical check before taking him to the Hamilton County Jail. [Filing No. 92-2 at 21.] Mr. Cummings then appeared to have some sort of episode while in the back of Sergeant Quakenbush's police vehicle prior to leaving the scene, where he was moving erratically while handcuffed and belted in. [Filing No. 84 at 10:29-10:30.] Sergeant Quakenbush requested a paramedic and Deputy Horine released Mr. Cummings' seat belt. [Filing No. 84 at 10:30.] When Sergeant Quakenbush asked Mr. Cummings if he was doing alright, Mr. Cummings responded that the handcuffs were too tight. [Filing No. 84 at 10:31.] Sergeant Quakenbush asked Mr. Cummings if he wanted a medic to check him out, and Mr. Cummings responded that they could not do anything and his medication was at home. [Filing No. 84 at 10:32.] The paramedics arrived and a paramedic at the scene reported that Mr. Cummings was not having a seizure and that "he wouldn't be talking to us like this right now if he had." [Filing No. 92-2 at 12.]

## B. Time at Riverview

Mr. Cummings remained handcuffed while in Sergeant Quakenbush's police vehicle and, upon arrival at Riverview, Sergeant Quakenbush transported him to a 10x12 exam room. [Filing No. 92-2 at 11; Filing No. 92-3 at 21.] For the majority of the time that Mr. Cummings was in that room, Sergeant Quakenbush was next door observing him. [Filing No. 92-2 at 11.] When Mr. Cummings arrived at Riverview, he was alert and oriented, was able to converse with medical personnel, and was able to advise medical personnel of his medical history. [Filing No. 87-1 at 39-40.] Mr. Cummings also advised medical personnel that he was fearful of withdrawing from narcotic pain medication while he was incarcerated. [Filing No. 87-1 at 41.]

Mark Epperson, R.N., was the first healthcare provider to see Mr. Cummings at River-view. [Filing No. 92-2 at 12.] Sergeant Quakenbush advised Nurse Epperson why they were at Riverview, and also told Nurse Epperson that Mr. Cummings had a history of epilepsy and had had an "incident" in the back of the police vehicle. [Filing No. 92-2 at 12.] Sergeant Quakenbush also advised Nurse Epperson that paramedics had checked Mr. Cummings at the scene and had reported that he had not had a seizure. [Filing No. 92-2 at 12.] Mr. Cummings also directly advised Nurse Epperson that he had a medical history of seizures. [Filing No. 87-1 at 51.] Nurse Epperson took Mr. Cummings' blood pressure, heart rate, temperature, and respiratory rate. [Filing No. 87-1 at 35; Filing No. 87-1 at 51.] Subsequently, Sergeant Quakenbush attempted to perform a drug recognition evaluation on Mr. Cummings, but he was forced to terminate the evaluation approximately five minutes later due to Mr. Cummings' failure to cooperate. [Filing No. 92-2 at 15.] While at Riverview, Mr. Cummings told Sergeant Quakenbush that he never said he was having a seizure while in the police vehicle, but instead that his handcuffs were just too tight and he was angry. [Filing No. 92-2 at 14.]

Nurse Epperson next encountered Mr. Cummings when Mr. Cummings consented to a blood draw, which Nurse Epperson performed. [Filing No. 87-1 at 51.] Mr. Cummings had not had any seizure activity at Riverview up until the time that Nurse Epperson performed the blood draw. [Filing No. 87-1 at 42; Filing No. 87-1 at 46.] The blood draw was the last time that Mr. Cummings saw Nurse Epperson during his time at Riverview. [Filing No. 87-1 at 51.] Nurse Epperson was not present when Mr. Cummings allegedly had a seizure at Riverview, nor was he present when Mr. Cummings talked about having a seizure at Riverview. [Filing No. 87-1 at 51-52.] If Mr. Cummings had exhibited any signs of seizure activity while he was at Riverview, or

if Mr. Cummings had appeared disoriented or unresponsive, Nurse Epperson would have noted so on Mr. Cummings' medical chart. [Filing No. 92-8 at 9.]

Mr. Cummings saw Dr. Julie Miramonti, the emergency room physician on duty at Riverview at the time, approximately thirty minutes after having his blood drawn by Nurse Epperson. [Filing No. 92-8 at 5.] Dr. Miramonti recalls that while Mr. Cummings or someone who was there indicated that he was having seizures, her observations and her interactions with him (including the fact that he was talking) told her he was not having seizures. [Filing No. 92-7 at 3; Filing No. 92-7 at 5-6; Filing No. 92-7 at 10-11.] Mr. Cummings did not complain that he was having seizures when Dr. Miramonti saw him and, instead, expressed his concern regarding possible withdrawal from narcotics and benzodiazepines if he was incarcerated. [Filing No. 92-7 at 8.] Dr. Miramonti would have documented any seizure activity in Mr. Cummings' chart and she did not. [Filing No. 92-7 at 13-14.] Dr. Miramonti also found the Mr. Cummings was not neurologically impaired when he was at Riverview, and she did not document any other type of impairment. [Filing No. 92-7 at 10.] Dr. Miramonti gave Mr. Cummings a new Fentanyl patch and a prescription for morphine. [Filing No. 92-7 at 9.]

Mr. Cummings alleges that he suffered a single seizure at Riverview, which took place while he was handcuffed in the exam room, after his blood was drawn, after Dr. Miramonti examined him, after his new Fentanyl patch was applied, and while no one was in the room or at the window. [Filing No. 92-3 at 15-16; Filing No. 92-3 at 24-25; Filing No. 92-3 at 29.] Mr. Cummings claims that he suffered injuries to his arms and shoulders during the seizure at Riverview, including a torn rotator cuff and a torn bicep tendon. [Filing No. 92-3 at 28.] After Dr. Miramonti was finished examining Mr. Cummings, Sergeant Quakenbush was given release paperwork and he and Mr. Cummings left Riverview. [Filing No. 92-2 at 17; Filing No. 92-7 at 9.]

### C. Time in Hamilton County Jail

Later that afternoon, Mr. Cummings was booked into Hamilton County Jail, where he completed a medical questionnaire, and his medications were confirmed. [Filing No. 92-3 at 20; Filing No. 92-3 at 26.] Riverview faxed Mr. Cummings' medical chart to the Hamilton County Jail, which advised Jail staff of the fact that a new duragesic patch had been ordered for Mr. Cummings, and of Mr. Cummings' medications. [Filing No. 92-8 at 8-9; Filing No. 92-8 at 13-19.] The Hamilton County Jail's October 23, 2010 Medical On-Call form indicates that: (1) Officer Martz and/or Sergeant Stevens called Mr. Cummings' treating physician at Riverview, who confirmed Mr. Cummings' medications; (2) Mr. Cummings would not need a Fentanyl patch again for seventy-two hours; (3) the same officer(s) called CVS and were informed that the only seizure-related medication that Mr. Cummings was on was Topamax; (4) Dr. Harris was contacted regarding Mr. Cummings' medications and ordered Topamax; and (5) Sergeant Stinson then called to indicate that Mr. Cummings' medications had not yet been filled or picked up. [Filing No. 92-12 at 25.]

Jail records indicate that Mr. Cummings was booked into Hamilton County Jail at approximately 3:20 p.m. on October 23, 2010, housed in the Jail's holding area from that time until 9:47 p.m. on the same day, moved to the medical unit (where he was continuously monitored by Jail medical staff) until 5:04 p.m. the following day "due to his history of seizures and the medications he is on," and taken to the holding area where he remained for six minutes, then booked out of Hamilton County Jail at approximately 5:10 p.m. on October 24, 2010. [Filing No. 92-12 at 2.] Mr. Cummings was given his medications during the evening of October 23, 2010. [Filing No. 92-12 at 2; Filing No. 92-12 at 31-34.]

### D.  The Charges Against Mr. Cummings

On March 17, 2011, approximately five months after Mr. Cummings' October 23, 2010 arrest, the Hamilton County Prosecutor's Office filed an Information charging Mr. Cummings with Operating While Intoxicated.  [Filing No. 92-2 at 18-19.]  Hamilton County Deputy Prosecutor Julie Pottenger made the decision to formally charge Mr. Cummings with Operating While Intoxicated, and based her decision solely on Sergeant Quakenbush's Affidavit for Probable Cause.  [Filing No. 92-10 at 2.]  Sergeant Quakenbush was not involved in the process of determining whether to charge Mr. Cummings with Operating While Intoxicated, and did not attempt to influence, nor did he actually influence, Ms. Pottenger's decision.  [Filing No. 92-10 at 2.]

On August 23, 2011, the Hamilton County Prosecutor's Office filed an addition charge of Resisting Law Enforcement against Mr. Cummings.  [Filing No. 92-2 at 19.]  The Resisting Law Enforcement charge was based on a second Affidavit for Probable Cause that Sergeant Quakenbush prepared at the request of the Hamilton County Prosecutor's Office.  [Filing No. 92-2 at 19; 92-11 at 2.]  Specifically, based upon Mr. Cummings' then-counsel's offer that Mr. Cummings would be willing to plead guilty to Resisting Law Enforcement if the Hamilton County Prosecutor's Office would dismiss the Operating While Intoxicated charge, and Deputy Prosecutor Amy Summerfield's review of the October 23, 2010 video footage showing Mr. Cummings pulling away from Sergeant Quakenbush prior to his arrest, Deputy Prosecutor Summerfield asked Sergeant Quakenbush to prepare a second Probable Cause Affidavit which would focus on the facts supporting a charge of Resisting Law Enforcement.  [Filing No. 92-11 at 1-2.]  Deputy Prosecutor Summerfield's decision to charge Mr. Cummings with Resisting Law Enforcement was based solely on Sergeant Quakenbush's second Probable Cause Affidavit and the October 23, 2010 video footage, and Sergeant Quakenbush was not involved in the process of determin-

ing whether to charge Mr. Cummings nor did he attempt to influence, or actually influence, Deputy Prosecutor Summerfield to charge Mr. Cummings with Resisting Law Enforcement. [Filing 92-11 at 2.]

In May 2012, the Hamilton County Prosecutor's Office dismissed the Operating While Intoxicated and Resisting Law Enforcement charges against Mr. Cummings based on witness availability issues. [Filing No. 92-11 at 2.]

### E. The Lawsuit

On October 22, 2012, Mr. Cummings filed this lawsuit against Sergeant Quakenbush, Dr. Miramonti, Nurse Epperson, and the remaining Hamilton County Defendants.[4] [Filing No. 1.] He asserts claims against: (1) Sergeant Quakenbush for false arrest, false imprisonment, and malicious prosecution; (2) Sergeant Quakenbush, Dr. Miramonti and Nurse Epperson for deprivation of constitutional rights for failure to provide proper medical care; and (3) the Hamilton County Sheriff's Department for negligence for failing to properly care for him while he was in the Hamilton County Jail. [Filing No. 1 at 5-6.]

### III.
#### DISCUSSION

### A. False Arrest/False Imprisonment Claims Against Sergeant Quakenbush

At the outset, the Court notes that it is appropriate to analyze the false arrest and false imprisonment claims together because "Indiana courts have used the terms 'false arrest' and 'false imprisonment' interchangeably when a plaintiff's claim stems from detention by authorities without probable cause." *Bentz v. City of Kendallville*, 577 F.3d 776, 780 (7th Cir. 2009); *see also Row v. Holt*, 864 N.E.2d 1011, 1016 n.4 (Ind. 2007) ("'inasmuch as Row's claim for

---

[4] Mr. Cummings originally sued Riverview as well, but voluntarily dismissed all claims against it and all state law medical malpractice claims against Dr. Miramonti and Nurse Epperson in August 2013. [*See* Filing No. 58; Filing No. 59.]

false imprisonment stems from his alleged false arrest, we need not make a separate analysis for the former'…Thus, our analysis, though discussed in relation to false arrest, applies equally to the false imprisonment claim") (internal citation omitted).

Mr. Cummings has not clearly set forth whether he brings his claims under federal law, Indiana law, or both, instead generally asserting that his constitutional claims are brought under 42 U.S.C. § 1983 and that the Court has supplemental jurisdiction over his claims under Indiana law. [Filing No. 1 at 1.] Viewing the Complaint broadly, the Court will address both. To prove a § 1983 claim, Mr. Cummings must demonstrate: "(1) that he was deprived of a right secured by the Constitution or laws of the United States, and (2) that the deprivation was visited upon [him] by a person or persons acting under color of state law." *Reynolds v. Jamison*, 488 F.3d 756, 764 (7th Cir. 2007) (alteration in original) (quoting *Kramer v. Village of North Fond du Lac*, 384 F.3d 856, 861 (7th Cir. 2004) (quotation marks omitted)). Under either federal or Indiana law, in order to succeed on a false arrest or false imprisonment claim, Mr. Cummings must show that he was arrested without probable cause. *Gonzalez v. City of Elgin*, 578 F.3d 526, 537 (7th Cir. 2009); *Jones v. City of Elkhart, Ind.*, 737 F.3d 1107, 1114 (7th Cir. 2013) (for false arrest claim, "Indiana requires no different a showing of probable cause than does the federal claim"); *Bugariu v. Town of St. John, Ind.*, 2014 WL 958025, *3 (N.D. Ind. 2014) ("The big question in a false arrest claim under Indiana or federal law is whether the defendant had probable cause for the arrest"). Probable cause is "an absolute defense to a wrongful arrest claim under [42 U.S.C. §] 1983." *Rooni v. Biser*, 742 F.3d 737, 740 (7th Cir. 2014); *Beauchamp v. City of Noblesville, Ind.*, 320 F.3d 733, 746 (7th Cir. 2003). It is also "an absolute bar to a claim of…false imprisonment under…Indiana law." *Ocasio v. Turner*, 2014 WL 1922927, *9 (N.D. Ind. 2014).

"Probable cause to make an arrest exists when a reasonable person confronted with the sum total of the facts known to the officer at the time of the arrest would conclude that the person arrested has committed, is committing, or is about to commit a crime." *Venson v. Altamirano*, 2014 WL 1503003, *6 (7th Cir. 2014); *see also Huff v. Reichert*, 744 F.3d 999, 1007 (7th Cir. 2014) ("Probable cause exists when 'the facts and circumstances within [the officer's] knowledge and of which they have reasonably trustworthy information are sufficient to warrant a prudent person in believing that the suspect had committed an offense'").

The Court finds that Sergeant Quakenbush had probable cause to arrest Mr. Cummings. The undisputed evidence shows that:

- Mr. Cummings backed his car into a police vehicle;

- Deputy Horine told Sergeant Quakenbush that he thought Mr. Cummings was impaired, likely on prescription drugs, and his pupils were small;

- Sergeant Quakenbush observed that Mr. Cummings appeared to be slumped over and leaning on the driver's side window, his pupils were constricted, his movements were slow and sluggish, his eyes were bloodshot, his speech was low and raspy, he was thick-tongued, he seemed uncoordinated, and he was very defensive;

- Mr. Cummings told Sergeant Quakenbush that he was taking several prescription narcotics including Fentanyl, Morphine, Xanax, and Zoloft, and that he would have difficulty passing the field sobriety test; and

- Mr. Cummings failed the field sobriety test.

The Court finds that this evidence would cause a reasonable person to believe that Mr. Cummings had been operating his vehicle while intoxicated.[5] *See, e.g., Mudd v. Lyon*, 2014 WL

---

[5] Significantly, even Officer Frederick Ilnicki, the individual designated by Mr. Cummings' counsel to be a testifying expert witness, stated that "Kris Cummings showed signs of impairment. Specifically, Mr. Cumming's balance was unsteady, his speech was slurred at times, and he displayed four of six clues during the Horizontal Gaze Nystagmus test according to Sgt. Quakenbush's field notes. Mr. Cummings appeared to display agitation easily and sensitivity to flashing lights." [Filing No. 93-1 at 1-2.]

218443, *7 (N.D. Ind. 2014) (probable cause for arrest for operating while intoxicated existed where detective "observed that plaintiff had red, watery eyes, slurred speech, and had breath that smelled like alcohol [and a]fter getting out of the car, plaintiff was unsteady on his feet, and failed a standard field sobriety test, the horizontal gaze and nystagmus test").

To the extent Mr. Cummings alleges in his Complaint that Sergeant Quakenbush should have investigated the cause of his impairment further based on Mr. Cummings' history of seizures, the Court rejects that notion. Once a police officer finds probable cause – which the Court holds was present – an officer is under no duty to investigate further. *Matthews v. City of East St. Louis*, 675 F.3d 703, 707 (7th Cir. 2012) ("once an officer has probable cause, he need not seek out exculpatory evidence"); *Padula v. Leimbach*, 740 F.Supp.2d 980, 988-89 (N.D. Ind. 2010) (quoting *Sheik-Abdi v. McClennan*, 37 F.3d 1240, 1246 (7th Cir. 1994)) (officers had probable cause to arrest diabetic plaintiff for operating while intoxicated, even though it was later determined that plaintiff was suffering from effects of diabetes and was not intoxicated; court stated "[t]he on-the-spot determination often requires an exercise of judgment, which turn[s] on the assessment of probabilities in particular factual contexts – not readily, or even usefully, reduced to a neat set of legal rules. In recognition of the endless scenarios confronting police officers in their daily regimen, courts evaluate probable cause not on the facts as an omniscient observer would perceive them but on the facts as they would have appeared to a reasonable person

in the position of the arresting officer").[6]  Based on the evidence, the Court concludes that Sergeant Quakenbush had probable cause to arrest Mr. Cummings, and had no duty to further investigate to see if his seizure disorder was the actual cause of his behavior.[7]

In sum, Sergeant Quakenbush has submitted evidence demonstrating that he had probable cause to arrest Mr. Cummings, and Mr. Cummings has not disputed that evidence.  Accordingly, because the Court finds that probable cause existed, Mr. Cummings' false arrest and false imprisonment claims fail as a matter of both federal and Indiana law.[8]

### B.  Malicious Prosecution Claim Against Sergeant Quakenbush

Although not clear, the Court will assume that Mr. Cummings attempts to state a malicious prosecution claim under both federal and Indiana law.  Sergeant Quakenbush argues that Mr. Cummings' federal malicious prosecution claim fails because he did not have a constitutional right to have the charges which were filed against him dismissed, and that there is no evidence Sergeant Quakenbush acted without probable cause or that he participated in the decision to charge Mr. Cummings.  [Filing No. 93 at 29-31.]  Sergeant Quakenbush also argues that he is

---

[6] The Court also rejects any allegation that Sergeant Quakenbush was somehow targeting Mr. Cummings because of their past encounters.  [*See, e.g.*, Filing No. 1 at 3.]  Mr. Cummings has not cited to nor submitted any evidence regarding those past encounters (which Sergeant Quakenbush denies occurred, [Filing No. 92-2 at 5]) and, in any event, an officer's motive in arresting an individual does not factor into the analysis of whether probable cause existed for the arrest.  *See Del Marcelle v. Brown County Corp.*, 680 F.3d 887, 902 (7th Cir. 2012) ("Probable cause is objective; the officers' motives, beliefs, and so on, don't matter and cannot create liability").

[7] In any event, although Mr. Cummings told Sergeant Quakenbush that he had experienced seizures in the past, a paramedic on the scene advised Sergeant Quakenbush that Mr. Cummings was not experiencing seizures at that time.  [Filing No. 92-2 at 12-13.]

[8] Even if there were not actual probable cause to arrest Mr. Cummings – although the Court holds that there was – there was at least "arguable probable cause" such that Sergeant Quakenbush would be entitled to qualified immunity from Mr. Cummings' false arrest and false imprisonment claims.  *See Gutierrez v. Kermon*, 722 F.3d 1003, 1008 (7th Cir. 2013) ("qualified immunity provides shelter for officers who have 'arguable probable cause' to arrest – i.e., those officers that reasonably but mistakenly believe they have probable cause").

immune from a malicious prosecution claim under Indiana law because he was acting within the scope of his employment. [Filing No. 93 at 30.]

"Federal courts are rarely the appropriate forum for malicious prosecution claims," because "individuals do not have a 'federal right not to be summoned into court and prosecuted without probable cause….'" *Ray v. City of Chicago*, 629 F.3d 660, 664 (7th Cir. 2011) (quoting *Tully v. Barada*, 599 F.3d 591, 594 (7th Cir. 2010)). Additionally, "the existence of an adequate state remedy for the plaintiff's injury eliminates the need for federal intervention via § 1983….[T]he existence of a malicious prosecution cause of action under state law 'knocks out any constitutional tort of malicious prosecution, because, when a state-law remedy exists…due process of law is afforded by the opportunity to pursue a claim in state court.'" *Serino v. Hensley*, 735 F.3d 588, 592-93 (7th Cir. 2013) (citations and emphasis omitted). The Seventh Circuit Court of Appeals has instructed, however, that Indiana state law does not provide an adequate remedy for malicious prosecution because the Indiana Tort Claims Act gives immunity to Indiana government units and employees from malicious prosecution claims. *Julian v. Hanna*, 732 F.3d 842, 847-48 (7th Cir. 2013); *see also* Ind. Code § 34-13-3-3(6).

While Mr. Cummings' federal malicious prosecution claim does not fail due to an adequate state law remedy, it fails for another reason: because there is no constitutional right not to be prosecuted without probable cause, *Ray*, 629 F.3d at 664, Mr. Cummings must allege some other constitutional violation and he does not do so. His malicious prosecution claim – as far as the Court can discern – is based on allegations that: (1) Sergeant Quakenbush "caused [the Operating While Intoxicated charge] to be brought against [Mr.] Cummings…; (2) lab tests later revealed that he was not intoxicated; (3) three months later, Sergeant Quakenbush "caused [Mr.] Cummings to be additionally charged with resisting law enforcement…; and (4) "[o]n May 10,

2012, all criminal charges against [Mr.] Cummings were dismissed." [Filing No. 1 at 4.] This amounts to Mr. Cummings alleging that he was charged without probable cause, which cannot form the basis for a federal malicious prosecution claim. Additionally, the Court has already concluded that Sergeant Quakenbush had probable cause to arrest Mr. Cumming for Operating While Intoxicated and "[a]s a matter of law, probable cause defeats a claim for malicious prosecution." *Venson*, 2014 WL 1503003 at *8.

To the extent Mr. Cummings attempts to allege a due process violation to support his § 1983 malicious prosecution claim based on allegations that Sergeant Quakenbush participated in the decision to charge him, or influenced the Prosecutor's decision to charge him,[9] Sergeant Quakenbush has presented evidence that he had nothing to do with the charging decisions or the decision to dismiss the charges, and that his only post-arrest act was to complete an affidavit at the request of the Hamilton County Prosecutor's Office to facilitate a plea agreement. [*See* Filing No. 92-2 at 19; Filing No. 92-10 at 2; Filing No. 92-11 at 1-2.] Mr. Cummings has not disputed any of this evidence. Accordingly, a malicious prosecution claim based on Sergeant Quakenbush's alleged participation in deciding the charges against Mr. Cummings fails. *See Serino*, 735 F.3d at 594 (plaintiff "does not allege that [the officer's] recommendations were knowingly false, that he withheld exculpatory evidence from the prosecutor, or that he took steps to wrongfully further what he knew was a baseless prosecution") (emphasis omitted).

Mr. Cummings' malicious prosecution claim under Indiana law fails because, as noted above, Sergeant Quakenbush is entitled to immunity. *See* Ind. Code 34-13-3-3 ("A governmental entity or an employee acting within the scope of the employee's employment is not liable if a

---

[9] The Seventh Circuit Court of Appeals in *Serino* noted that the United States Supreme Court "left open the possibility that a plaintiff could state the equivalent of a common-law malicious prosecution claim as a claim of a violation of the Due Process Clause…." 735 F.3d at 592 (discussing *Albright v. Oliver*, 510 U.S. 266, 114 S. Ct. 807, 127 L.Ed.2d 114 (1994)).

loss results from…[t]he initiation of a judicial or an administrative proceeding"). Mr. Cummings does not allege – nor is there any evidence indicating – that Sergeant Quakenbush was acting outside the scope of his employment in his dealings with Mr. Cummings. Accordingly, Sergeant Quakenbush is immune from a state law malicious prosecution claim.

Mr. Cummings' malicious prosecution claim fails under both federal and state law, and Sergeant Quakenbush is entitled to summary judgment on that claim.

### C. Failure to Provide Proper Medical Care Against Sergeant Quakenbush, Nurse Epperson, and Dr. Miramonti

Mr. Cummings alleges that Sergeant Quakenbush, Nurse Epperson, and Dr. Miramonti were "knowingly or intentionally indifferent towards [his] serious medical needs, in failing to provide him with medical care as he was experiencing seizures." [Filing No. 1 at 5.] To prove a § 1983 claim, Mr. Cummings must demonstrate: "(1) that he was deprived of a right secured by the Constitution or laws of the United States, and (2) that the deprivation was visited upon [him] by a person or persons acting under color of state law." *Reynolds v. Jamison*, 488 F.3d 756, 764 (7th Cir. 2007) (alteration in original) (quoting *Kramer v. Village of North Fond du Lac*, 384 F.3d 856, 861 (7th Cir. 2004)) (quotation marks omitted).

The Fourth Amendment governs Mr. Cummings' § 1983 claim for inadequate medical care. *Ortiz v. City of Chicago*, 656 F.3d 523, 530 (7th Cir. 2011). It requires a determination of "whether the state actor's 'response to [the arrestee]'s medical needs was objectively unreasonable' and 'caused the harm of which [the arrestee] complains.'" *Currie v. Chhabra*, 728 F.3d 626, 631 (7th Cir. 2013) (alterations in original) (quoting *Ortiz, 656 F.3d at 530*). The Seventh Circuit has identified four factors that inform this inquiry: "(1) whether the officer has notice of the detainee's medical needs; (2) the seriousness of the medical need; (3) the scope of the requested treatment; and (4) police interests, including administrative, penological, or investigatory con-

cerns." *Ortiz*, 656 F.3d at 530. These factors apply in both the law enforcement officer and medical professional context. *See Currie*, 728 F.3d at 631 (noting, in a case regarding a medical professional, that *Ortiz* set forth the "factors that inform [the] Fourth Amendment analysis"). The Court will analyze these factors as they apply to Sergeant Quakenbush, Nurse Epperson, and Dr. Miramonti in turn.

### 1. Sergeant Quakenbush

Sergeant Quakenbush argues that he acted appropriately at all times relating to Mr. Cummings' medical treatment. [Filing No. 93 at 32-34.] Assuming Sergeant Quakenbush had notice of Mr. Cummings' history of seizures – and the evidence indicates that he did – the Court turns to the remaining three factors. As to the seriousness of Mr. Cummings' need and the scope of the requested treatment, the Court focuses on the alleged need to be kept safe in light of Mr. Cummings' seizure condition. The undisputed evidence shows that Sergeant Quakenbush: (1) asked Mr. Cummings about any medical conditions and medications, [Filing No. 84 at 10:02-10:05]; (2) consulted with paramedics at the scene when Mr. Cummings claimed to be having a seizure or "episode," [Filing No. 92-2 at 12]; and (3) brought Mr. Cummings to Riverview before transporting him to the Hamilton County Jail so that he could be medically cleared, [Filing No. 92-2 at 21]. Mr. Cummings has not provided any details regarding how he thinks Sergeant Quakenbush acted in an objectively unreasonable manner and caused him harm, nor has he pro-

vided any evidence contradicting the evidence that indicates otherwise. His § 1983 claim against Sergeant Quakenbush fails as a matter of law.[10]

### 2. *Nurse Epperson*

Nurse Epperson argues that Mr. Cummings' claim against him for failure to provide adequate medical care fails because Mr. Cummings must prove that Nurse Epperson had notice of Mr. Cummings' complaints of a seizure, and that the undisputed facts show he did not have such notice. [Filing No. 86 at 6-13.] The undisputed evidence shows that Nurse Epperson encountered Mr. Cummings twice – first, to take his medical history and vital signs when Mr. Cummings arrived at Riverview and second, when Nurse Epperson returned to perform a blood draw on Mr. Cummings. [Filing No. 87-1 at 51; Filing No. 92-2 at 12.] During their first encounter, Mr. Cummings advised Nurse Epperson that he had a history of seizures, which Nurse Epperson documented, but Mr. Cummings was alert, oriented, conversant, and did not complain that he was having a seizure or was about to have one. [Filing No. 87-1 at 51; Filing No. 92-8 at 9.] When Nurse Epperson returned later to perform Mr. Cummings' blood draw, Mr. Cummings had not had a seizure or complained of one. [Filing No. 87-1 at 42; Filing No. 87-1 at 46.] Nurse Epperson did not see Mr. Cummings after the blood draw, including after the time he alleges he had a seizure. [Filing No. 87-1 at 51.]

---

[10] To the extent Mr. Cummings alleges § 1983 claims, or claims for false arrest, false imprisonment, or malicious prosecution, against the Hamilton County Sheriff's Department and/or Sheriff Bowen – and it does not appear that he does – such claims would fail. A § 1983 claim cannot be brought on a respondeat superior theory of liability. *See Richardson v. Lemke*, 745 F.3d 258, 282 (7th Cir. 2014) ("local governments can be held liable for constitutional deprivations only when the complaint is about governmental custom, practice, or policy; there is no respondeat superior liability under § 1983"). Additionally, Mr. Cummings has not presented any evidence regarding direct actions by the Hamilton County Sheriff's Department or Sheriff Bowen relating to his false arrest, false imprisonment, or malicious prosecution claims. And the Court has held that the false arrest, false imprisonment, and malicious prosecution claims against Sergeant Quakenbush fail, so claims against the Hamilton County Sheriff's Department and/or Sheriff Bowen based on Sergeant Quakenbush's conduct would likewise fail.

The Court finds that Nurse Epperson did not have notice of any seizure activity on the part of Mr. Cummings. Absent such notice, Mr. Cummings cannot present – and has not presented – evidence that Nurse Epperson was objectively unreasonable in treating him and Nurse Epperson is entitled to summary judgment on Mr. Cummings' claim.

### 3. Dr. Miramonti

Dr. Miramonti does not address the *Ortiz* factors, but argues only that Mr. Cummings did not designate an expert witness on the standard of care, that "expert testimony is required to establish the appropriate standard of care," and that "[i]f Plaintiff cannot establish the appropriate standard of care applicable to Dr. Miramonti's care and treatment of him at Riverview, he also cannot prove that Dr. Miramonti's care was objectively unreasonable or the proximate cause of his injuries." [Filing No. 90 at 3-4.]

As discussed above, the Fourth Amendment governs Mr. Cummings' § 1983 claim relating to the medical care he received while he was an arrestee. Dr. Miramonti has not cited any cases which stand for the proposition that an arrestee *must* have a medical expert to prove that a medical professional acted objectively unreasonable – the cases she cites simply do not stand for that broad proposition and, indeed, were either decided under the Eighth Amendment's deliberate indifference standard, which does not apply here, or are inapposite for other reasons. *See Greeno v. Daley*, 414 F.3d 645, 658 (7th Cir. 2005) (case decided under Eighth Amendment deliberate indifference standard "requires an assessment of the adequacy of treatment that [plaintiff] did receive, a question that will *likely* require expert testimony") (emphasis added); *Aruanno v. Glazman*, 316 Fed. Appx. 194, 195-96 (3d Cir. 2009) (holding that Eighth Amendment claim of deliberate indifference to a serious medical need "requires expert testimony when the seriousness of injury or illness would not be apparent to a lay person"); *Olivier v. Robert L. Yeager*

*Mental Health Ctr.*, 398 F.3d 183, 191 (2d Cir. 2005) (in case involving plaintiff's claim that his due process rights were violated when he was involuntarily committed to a mental institution, court stated that "a plaintiff ordinarily must introduce expert testimony to establish the relevant medical standards that were allegedly violated," but that "there are rare cases in which expert testimony…may nonetheless be unnecessary for a factfinder to determine that a physician violated a standard of proper care," such as when "'a deviation from a proper standard of care may be so clear and obvious that it will be within the understanding of the ordinary layman without the need for expert testimony'") (citation omitted); *Miltier v. Beorn*, 896 F.2d 848, 852 (4th Cir. 1990) (in Eighth Amendment deliberate indifference case, court stated "expert exploration is required to aid the jury in determining the threshold standard of medical care," but that expert testimony is not needed for a jury to find that "certain actions fell so far below the enunciated standard of care that they constituted gross indifference actionable under § 1983").

While the Court's Local Rules authorize it to summarily grant Dr. Miramonti's Motion for Summary Judgment, L.R. 7-1(c)(4) ("The court may summarily rule on a motion if an opposing party does not file a response within the deadline"), the Court will not do so because the motion is based on an incorrect proposition of law – that Mr. Cummings' § 1983 claim related to the medical treatment he received from Dr. Miramonti can only survive if supported by expert testimony. To be sure, there may be Fourth Amendment cases where expert testimony is needed to determine whether medical care was objectively reasonable. However, there is not a blanket rule that such testimony is always necessary. Whether it is needed depends on the specific facts of the case, but Dr. Miramonti did not set forth any facts at all relating to her treatment of Mr.

Cummings in her Motion for Summary Judgment.[11]  Simply put, the Court cannot conclude based on the evidence before it, and as a matter of law, that expert testimony is necessary.  Because that was the sole basis for Dr. Miramonti's Motion for Summary Judgment, it is denied.[12]

### D.  Negligence Claim Against the Hamilton County Sheriff's Department

Mr. Cummings alleges that the Hamilton County Sheriff's Department was "negligent in [its] care of [Mr. Cummings] while he was in the Hamilton County Jail and its negligence caused injuries and damages to [him]."  [Filing No. 1 at 5.]  The Hamilton County Defendants argue that Mr. Cummings has acknowledged that he received his medication while at the Hamilton County Jail, and has not presented any evidence that he suffered any injury while he was at the Hamilton County Jail.  [Filing No. 93 at 32-33.]

To prevail on a negligence claim, "a plaintiff is required to prove: (1) a duty owed by the defendant to the plaintiff; (2) a breach of that duty by the defendant; and (3) an injury to the plaintiff proximately caused by the breach."  *Peters v. Forster*, 804 N.E.2d 736, 738 (Ind. 2004) (citing *Benton v. City of Oakland City*, 721 N.E.2d 224, 232 (Ind. 1999)).  Summary judgment is rarely appropriate in negligence cases, as they are particularly fact sensitive.  *Rhodes v. Wright*, 805 N.E.2d 382, 387 (Ind. 2004).  "Nevertheless, a defendant is entitled to judgment as a matter

---

[11] If Dr. Miramonti believes the undisputed evidence shows that she provided objectively reasonable care to Mr. Cummings, the Court assumes she would have argued so.  *See, e.g.*, *Greenlaw v. United States*, 554 U.S. 237, 243-44, 128 S. Ct. 1559, 171 L.Ed.2d 399 (2008) ("[W]e rely on the parties to frame the issues for decision and assign to courts the role of neutral arbiter of matters the parties present….Our adversary system is designed around the premise that the parties know what is best for them, and are responsible for advancing the facts and arguments entitling them to relief") (quotations and citations omitted).

[12] The Court is not foreclosing the argument at trial that Mr. Cummings' § 1983 claim ultimately fails absent expert testimony.  But it cannot conclude based on Dr. Miramonti's motion as presented, which is not based on citation to materials in the record but rather solely on a flawed legal argument, that Dr. Miramonti is entitled to summary judgment absent expert testimony.  Of course, having missed the deadline, Mr. Cummings is precluded from calling a medical expert at trial.

of law when the undisputed material facts negate at least one element of the plaintiff's claim."

*Haire v. Parker*, 957 N.E.2d 190, 195 (Ind. 2011) (citing *Rhodes*, 805 N.E.2d at 385).

Mr. Cummings has not set forth any evidence that the Hamilton County Sheriff's Department directly caused any injury to him. Indeed, the only injury Mr. Cummings claims to have suffered took place when he had a seizure at Riverview, before he was booked into the Hamilton County Jail.[13] Mr. Cummings also has not specified what he believes the Hamilton County Sheriff's Department did wrong. And to the extent Mr. Cummings claims that the Hamilton County Sheriff's Department is negligent based on Sergeant Quakenbush's actions, the Court has already held that the undisputed evidence shows Sergeant Quakenbush acted appropriately in terms of Mr. Cummings' medical needs. He questioned Mr. Cummings regarding his medical conditions and medications, [Filing No. 84 at 10:02-10:05], consulted with paramedics at the scene when Mr. Cummings claimed to be having a seizure or "episode," [Filing No. 92-2 at 12], and brought Mr. Cummings to Riverview before transporting him to the Hamilton County Jail so that he could be medically cleared, [Filing No. 92-2 at 21].

Mr. Cummings simply has not provided any evidence indicating that the Hamilton County Sheriff's Department proximately caused his injuries and, accordingly, the Hamilton County Sheriff's Department is entitled to judgment as a matter of law on that claim.[14]

---

[13] While Mr. Cummings testified at his deposition that he also had a seizure while in a holding cell at the Hamilton County Jail, [Filing No. 92-3 at 14-15], he has neither cited to nor presented any evidence that he suffered any injuries as a result of that seizure.

[14] To the extent Mr. Cummings asserts a negligence claim against Sheriff Bowen (and it does not appear that he does) such a claim would fail for the same reason – he has not provided any evidence that Sheriff Bowen, either directly or through Sergeant Quakenbush's actions, proximately caused his injuries.

**IV.**
**CONCLUSION**

For the foregoing reasons, the Court **GRANTS** Defendant Mark Epperson's Motion for Summary Judgment, [Filing No. 85], and the Hamilton County Defendants' Motion for Summary Judgment, [Filing No. 91].  Further, the Court **DENIES** Defendant Julie Miramonti's Motion for Summary Judgment, [Filing No. 89].  No partial judgment shall issue, and Mr. Cummings' § 1983 claim against Dr. Miramonti will go forward.

**Distribution via ECF only to all counsel of record**